**ROLFES et al. v. DWELLINGHAM et al.**

**No. 14352.**

United States Court of Appeals
Eighth Circuit.

July 15, 1952.

Rehearing Denied Sept. 2, 1952.

Charles R. Judge, St. Louis, Mo. (W. Donald Dubail and Dubail & Judge, St. Louis, Mo., on the brief), for appellants.

Jacob N. Gross, Chicago, Ill. (Milton I. Goldstein, St. Louis, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a decree of injunction requiring Guy A. Thompson,

19. There is need to avoid both excessive nominalism and excessive "realism." See Frank, Courts on Trial (1949) 401–404.

Trustee of the Missouri Pacific Railroad Company, to refrain from displacing members of the class of his employees called "waiters-in-charge" from their jobs under compulsion of an award which was rendered on November 21, 1949, by a Special Board of Adjustment, and enjoining the dining car stewards and Brotherhood of Railroad Trainmen and others from interfering with compliance by the Trustee. By its terms the injunction remains in force pending determination by the National Railroad Adjustment Board of the question of jurisdiction involved in the dispute between plaintiff waiters-in-charge and the defendant dining car stewards, or for a reasonable time within which the plaintiffs, through their labor organization representatives, may invoke the jurisdiction of that Board.

The opinion of the trial court which identifies the parties and fully sets forth the issues that were presented and tried by the court, and the facts, conclusions and reasoning, is reported as Dwellingham v. Thompson, D.C., 91 F.Supp. 787.

As shown on page 794 of 91 F.Supp. of the report of the opinion, the court observed that "this case is very similar to Howard v. Thompson, D.C., 72 F.Supp. 695", and, 91 F.Supp. on page 795, "The similarity between the Howard case and the case at bar is apparent." "It is [the court's] opinion that the Howard case should be followed here."

The decision of this court in the appeal of the Howard case was handed down September 11, 1951, Howard v. St. Louis-San Francisco R. Co., 8 Cir., 191 F.2d 442, and this appeal was submitted to us on September 17, 1951. The Supreme Court granted certiorari in the Howard case, and on account of apparent similarity in the two cases we deferred our ruling in this case until the Supreme Court decided the Howard case on June 9, 1952.[1]

We do not mean to say that the two cases are on all fours with each other. There are points of difference. In the Howard case the attempt was to drive the porters because they were Negroes entirely off the railroad where they had "for a great many years served the Railroad with loyalty, integrity, and efficiency". That is not being attempted in respect to the waiters-in-charge who are involved in this case. Their status as waiters on dining cars in the service of the railroad has not been attacked, but where they have heretofore been employed interchangeably with stewards at the discretion of railroad management, the Trustee has agreed to employ only dining car stewards in the future. And as stated by the trial court, "it is clear that there will be fewer jobs available in the future for the plaintiffs and others of their class on whose behalf they sue." Loc. cit. 795 of 91 F.Supp.

The points of similarity in the two cases are clearly set forth in the report of the District Court's opinion, 91 F.Supp. at pages 794, 795, following the words "Plaintiffs' second argument is". The court there pointed out that in both cases "a jurisdictional dispute existed, and the company was forced to give the disputed work to one union to exclusion of the other. In the one case, the company entered into a new contract under threat of a strike; in the other, in the face of a refusal to terminate an existing strike, the company agreed to submit the dispute to arbitration." In both cases the railroad undertook to discontinue services of one class of its employees and to substitute the members of the other class in employment.

But the identical point involved in both cases is that the Trustee of the railroad undertook to change his agreements with the two classes of his employees without giving the 30-day notice required by Section 6 of the Railway Labor Act, 45 U.S.C.A. § 156.[2]

---

1. Brotherhood of Railroad Trainmen v. Howard, 72 S.Ct. 1022, 1024.

2. Revelant findings of the trial court:
   "8. Said displacement of plaintiffs by dining car stewards by defendant Thompson was a result of and in pursuance to a certain award issued by a Special Board

of adjustment hereinabove referred to. Said award was rendered on November 21, 1949, on claim number 1131 BRT 392. Said claim is the claim listed in Appendix 'A' to said agreement of October 24, 1949, between defendant Thompson and the above named labor organizations which claim reads as follows:

On the appeal of the Howard case this court, at page 449 of 191 F.2d, held that "the notice given to the train porters, in the attempted abolition of their position and termination of their employment as of April 1, 1946, was in any event invalid, as not satisfying the requirement of the Railway Labor Act, 45 U.S.C.A. § 156, for the giving of at least 30 days notice of any intended change in agreements affecting working conditions". We affirmed the ruling of the trial court to the same effect.

The view taken by the Supreme Court in the Howard case made it unnecessary for that court to consider the particular question of the notice. Footnote #4 of the opinion. The facts in the Howard case required the issuance of a permanent injunction to protect the train porters from discriminatory practices of the Brotherhood of Railroad Trainmen and the case was remanded to the District Court to issue a decree permanently enjoining the Railroad and the Brotherhood from use of the contract or any other similar discriminatory bargaining device to oust the train porters from their jobs. But the opinion of the Supreme Court closes with admonition to the District Court to bear in mind "that *disputed* questions of reclassification of the craft of 'train porters' are committed by the Railway Labor Act to the National Mediation Board."

In this case the trial court exercised its equity powers only to preserve the status quo ante of the waiters-in-charge in relation to the railroad and the dining car stewards and granted injunctive relief "in aid of the administrative machinery provided for the adjustment of disputes in the Rail-

" 'Protest of Dining Car Stewards account discontinuing stewards on trains 1 and 101 and trains 102 and 2 between St. Louis and Lake Charles and on trains 119 and 110 between Kansas City and Omaha with employees who hold no seniority as Dining Car Stewards' (employees referred to as holding no seniority as Dining Car Stewards are plaintiffs and the members of the class they represent).

"The Railroad submitted said claim to arbitration in the face of a refusal to terminate an existing strike by the Brotherhood of Railroad Trainmen.

"9. Said agreement creating the said Special Board of Adjustment contains as a part thereof the following:

" 'The Board shall render separate awards in writing in each of the claims listed in Appendix "A" in accordance with the provisions of Section 3 First of the Railway Labor Act, which shall have the same force and effect as awards of the National Railroad Adjustment Board.'

"10. Said Special Board of Adjustment ceased to function on and after November 21, 1949, insofar as the award hereinabove referred to is concerned.

"11. No notice of any hearing or hearings before said Special Board of Adjustment which resulted in the rendition of said award was given to plaintiffs, any member of the class they represent, or to any officer of Local No. 354—Hotel and Restaurant Employees International Alliance, which is the certified collective bargaining agent of plaintiffs and the members of the class they represent. Neither plaintiffs, the members of the class they represent nor any official or officials of said Local No. 354 had actual knowledge of the hearing or hearings of said Special Board of Adjustment resulting in the rendition of said award. Plaintiffs, members of the class they represent and officials of said Local No. 354 had no opportunity to be heard in any hearing or hearings of said Special Board of Adjustment. The Brotherhood of Railroad Trainmen excludes plaintiffs and the class they here represent from membership and does not and will not represent them.

"12. No notice was given to plaintiffs, any member of the class they here represent, or to any officer of said Local No. 354 by defendant Thompson or any of his agents or employees at any time prior to November 24, 1949, the date upon which plaintiffs were removed from the positions they occupied as waiters-in-charge on trains 7 and 8 and 14 and 15, said trains then being operated by defendant Thompson.

"13. Plaintiffs, by reason of their said displacement, have suffered loss of wages and loss of substantial benefits accruing to them based on their wages as waiters-in-charge pursuant to the Railroad Retirement Act of 1937, as amended. The existence of the award resulting in displacement of plaintiffs which the railroad has stated it feels obligated to put into force and effect will clearly produce the result that there will be fewer jobs available in the future for the plaintiffs and others of their class on whose behalf they sue."

way Labor Act." It limited its injunction strictly to the purpose of affording opportunity for the administrative Board to function as contemplated by the Act. Concluding that the displacement of the waiters-in-charge in the manner attempted by the Trustee was wrongful and illegal, the court left the "determination of the question whether the plaintiffs or the dining car stewards are entitled to the jobs in question under the agreements involved and the other applicable facts to be made by the Third Division of the National Railroad Adjustment Board."

The appellants here contend (1) that the decision that the displacement of plaintiffs violated 45 U.S.C.A. § 156 was erroneous; (2) that the injunction was erroneously granted contrary to the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.; (3) that plaintiffs were merely employed at will and therefore had no cause of action; (4) that the National Railroad Adjustment Board is without jurisdiction to consider the dispute over the jobs in question here.

■■■■ (1) Howard v. St. Louis-San Francisco Ry. Co., 8 Cir., 191 F.2d 442, is conclusive against the first contention that there was no violation of the Railway Labor Act in the failure of the Trustee to give notice. In the same situation we found a violation in the Howard case. (2) Also we consider the decisions of the Supreme Court in Graham v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Virginian R. Co. v. System Federation, No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, are equally conclusive that the Norris-LaGuardia Act does not deprive the federal courts of power to issue such an injunction as has been issued here in aid of the administrative Board and to preserve the right of the waiters-in-charge to resort to the administrative procedure provided by the Congress under the Railway Labor Act. (3) While it is true that the waiters-in-charge have had no contract specifying the circumstances under which one of their number is to be called instead of, or in ad-

dition to, a dining car steward, they contend that the long standing custom and usage of employing them at the discretion of management has conditioned any contract the dining car stewards have with the railroad. The waiters make no claim of unlawful acts by the stewards. Their complaint is that they themselves were displaced in violation of the Railway Labor Act. It is on that ground that the District Court, as we think properly, sustained its jurisdiction under 28 U.S.C.A. § 1337, and we find no error.

(4) The District Court declared as a conclusion of law that the National Railroad Adjustment Board "is under duty to hear all parties in interest in the same proceeding" and under their fourth point, the appellants have insisted that such is not the Board's duty and that the District Court was in error. But we do not find it necessary to make a declaration of the law in the matter. The Railway Labor Act contemplates that the Boards which it sets up shall function through process of mediation and interpretation of disputed contracts to minimize conflicts and interruptions of commerce.

The action taken by the railroad in this case under pressure cut the waiters-in-charge out of all benefits of the Railway Labor Act to the same effect as though the Act had never been passed. When the action was found to be wrongful and violative of the provisions of the Act, it was the duty of the court, and it properly acted, to restore the plaintiffs to their position before the wrongful action was taken against them. The terms of the injunction allow a reasonable time to waiters-in-charge to avail themselves of any and all administrative processes they may be advised are afforded them under the Act. They were not entitled to and the court properly did not award them the permanent injunction that was granted to the porters in the Howard case and they have not cross appealed from the decree herein. They had a cause of action to the extent that it was recognized and sustained by the court.

As we find no error the decree is in all respects affirmed with costs.

Affirmed.